# United States District Court

## for the Northern District of Oklahoma

---

Case No. 23-cv-507-JDR-JFJ

---

THE MCCLAIN GROUP, LLC; MRT HOLDINGS, LLC; FLDES VB PH1, LLC,

*Plaintiffs*,

*versus*

PRESTON HICKS; DIANE REAGLE; ROB THOMPSON; OKTUL BROP, LLC; INSIGHT PSYCHIATRIC HOSPITAL & CLINIC, LLC; REAGLE CONSULTING, LLC; MINGO 83, LLC; THOMPSON CONSTRUCTION, INC.; JOHN DOES 1-10,

*Defendants*.

---

## OPINION AND ORDER

---

The McClain Group, LLC, MRT Holdings, LLC, and FLDES VB PH1, LLC sued eight named defendants and ten fictional defendants for harms allegedly arising out of a failed attempt to develop a psychiatric facility. The named defendants have moved to dismiss Plaintiffs' claims under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Dkts. 34, 41, 43. For the reasons discussed below, the Court grants the motions and dismisses Plaintiffs' complaint without prejudice.

I

In the Fall of 2020, Defendants Preston Hicks and Diane Reagle, principals of OKTUL BROP, LLC,[1] contacted Plaintiffs to discuss the possibility

---

[1] OKTUL BROP, LLC, is allegedly the same entity as Beth Rapha Health Systems, LLC. Dkt. 2 at ¶ 17, n.1.

No. 23-cv-507

of developing land in Broken Arrow, Oklahoma to construct a psychiatric facility. Plaintiff PH1 purchased property for the project, and Plaintiffs MRTH and TMG began developing the property. OKTUL obtained a Certificate of Need for a 90-bed psychiatric hospital at the Broken Arrow location from the Oklahoma Department of Health.

On October 5, 2020, MRTH and OKTUL executed a letter of intent reflecting the planned construction of the psychiatric hospital. MRTH and TMG separately agreed that MRTH would act as landlord for the property, while TMG would act as the property's developer. Then, in July 2021, MRTH and OKTUL entered a formal lease agreement which set forth their respective obligations concerning the use of the property.

Plaintiffs allege that OKTUL was unable to secure the financing necessary to perform its obligations under the agreement or operate the facility, despite OKTUL's representations to the contrary. Once this became clear, one of Plaintiffs' principals became a member of OKTUL to secure funding and provide managerial insight for the project.

Mr. Hicks and Ms. Regal introduced Plaintiffs to Rob Thompson and Thompson Construction, who were allegedly interested in purchasing Plaintiffs' interest in the project and becoming the developer for OKTUL. Plaintiffs engaged in discussions with the Thompson Defendants regarding the prospective purchase and, in the course of doing so, shared proprietary information and documents to facilitate the proposed buyout. The purchase negotiations stalled in December 2022.

In January 2023, while Plaintiffs were continuing to work with Mr. Hicks, Ms. Reagle, and OKTUL to secure financing for the project, Plaintiffs began to suspect that those Defendants had begun negotiating with Rob Thompson and Thompson Construction to construct a different psychiatric hospital at a different location. Plaintiffs also learned that the information

2

No. 23-cv-507

they provided to the Thompson Defendants had been placed on the construction bidding market by one or more Defendants.

Plaintiffs allege that Mr. Hicks, Ms. Reagle, Reagle Consulting, Ms. Thompson, Thompson Construction, and Mingo 83 formed a new company, Insight Psychiatric Hospital & Clinic, LLC, to operate a competing facility "within blocks" of the property purchased by PH1. They further allege that Defendants purchased the competing property in December 2022, entered into a development agreement with an area hospital in January 2023, and secured funding for the competing project that same month, all while representing to Plaintiffs that they were working to secure funding and complete their planned project.

Plaintiffs sued Defendants in this Court for breach of contract, fraud, fraudulent inducement, fraudulent transfer, intentional interference with contract, intentional interference with business relationships, and civil conspiracy. Plaintiffs maintain that Broken Arrow cannot maintain two psychiatric hospitals in close proximity to one another and that, if Defendants are permitted to proceed with their new facility, Plaintiffs will suffer irreparable harm. They ask this Court to award both actual damages and injunctive relief prohibiting Defendants from moving forward with their competing facility.

II

The Court cannot consider the merits of Plaintiffs' claims unless it has jurisdiction over those claims. Because Plaintiff's claims do not arise under federal law, this Court may only retain jurisdiction over the parties' dispute if there is complete diversity between the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332; *Grynberg v. Kinder Morgan Energy Partners, L.P.*, 805 F.3d 901, 905 (10th Cir. 2015).

Mr. Hicks and OKTUL suggest that complete diversity is absent because one of OKTUL's owners is an Arkansas LLC, while Plaintiffs are also limited liability companies owned, in part, by an Arkansas resident. *See* Dkt.

No. 23-cv-507

34 at 1.[2] Plaintiffs respond that complete diversity is present because they are residents of both Arkansas and Florida, while OKTUL—an LLC that takes on the citizenship of its members—is a resident of Oklahoma.[3] Dkt. 45 at 2-3. Mr. Hicks and OKTUL do not address this information in their reply. Dkt. 49.

The Court presumes that Mr. Hicks and OKTUL have abandoned their jurisdictional argument which, in any event, lacks merit: The corporate disclosure statements filed with the Court establish that Plaintiffs are citizens of Florida and Arkansas, and that none of the Defendants are residents of either of those two states. *See* Dkts. 9, 30-31, 35-40. Based on that evidence and the allegation that the statutory amount-in-controversy threshold has been satisfied [Dkt. 3 at ¶ 14], the Court concludes that jurisdiction is proper under 28 U.S.C. § 1332.[4]

### III

Because this Court has jurisdiction over the parties' dispute, the Court may consider the merits of Defendants' motions to dismiss. These motions, which were filed under Rule 12(b)(6) of the Federal Rules of Civil Procedure, test the sufficiency of Plaintiffs' complaint. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[2] All citations utilize CM/ECF pagination.

[3] OKTUL's members are Diane Reagle, an Oklahoma resident, and Beth Rapha Global, LLC, an Arkansas limited liability company. Beth Rapha takes the citizenship of its member, Preston Hicks, who is an Oklahoma resident. *See* Dkt. 31.

[4] In their complaint, Plaintiffs allege that their "principal" became a member and manager of Beth Rapha/OKTUL. Dkt. 3 at ¶ 28. The principal is not identified, and it is not clear that this allegation is at odds with the parties' disclosure statements. For purposes of this order only, the Court credits the disclosure statements over the allegation, which is vague and lacks specificity. Should Plaintiffs choose to file an amended complaint, they are directed to identify the principal and his or her interests in Plaintiffs, Beth Rapha, and OKTUL.

No. 23-cv-507

(2009) (citation and quotation marks omitted). When resolving Defendants' motions, the Court will accept Plaintiffs' well-pleaded allegations as true and view them in the light most favorable to Plaintiffs. *See Bereznak v. Arrow Elecs., Inc.*, No. 24-1394, 2025 WL 2462657, at *1 (10th Cir. Aug. 27, 2025). But only the *well-pleaded* allegations need be accepted; "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

A

With this standard in mind, the Court turns first to Plaintiffs' breach-of-contract claim. OKTUL, the sole defendant named in this claim, argues that (1) Plaintiffs PH1 and TMG cannot state a claim for breach of contract against it, and (2) MRTH has failed to allege facts that, if true, would support its breach-of-contract claim. Dkt. 34 at 6-9. The Court agrees on both points.

OKTUL argues that there is no allegation that either PH1 or TMG entered a contract with OKTUL and that, as a result, those entities cannot assert a breach-of-contract claim against it. Plaintiffs concede that this is the case. *See* Dkt. 45 at 5 (acknowledging that the "only contract" at issue does not concern PH1 or TMG). The Court agrees that the complaint does not support a breach-of-contract claim by either PH1 or TMG. *Perry v. Baptist Health*, 358 Ark. 238, 244, 189 S.W.3d 54, 58 (2004) (stating that, in general, "to state a cause of action for breach of contract the complaint need only assert the existence of a valid and enforceable contract between the plaintiff and defendant," but recognizing an exception for third-party beneficiaries).

The complaint does identify a contract between MRTH and OKTUL, but it does not set forth facts that state a claim for relief under that contract. A plaintiff seeking to state a breach-of-contract claim under Arkansas law must allege facts establishing (1) the existence of an enforceable contract, (2) a duty owed by the defendant under that contract, (3) a breach of that duty, and (4) corresponding damages. *See Mason's Auto. Collision Ctr., LLC v. Auto-*

No. 23-cv-507

*Owners Ins. Co.*, 651 F. Supp. 3d 1047, 1051 (W.D. Ark. 2023). PH1 has failed to set forth facts that, if true, would establish all of these elements.

First, MRTH has failed to set forth facts demonstrating its lease agreement was enforceable and OKTUL owed duties under it. The term of that agreement was set to begin on "the date the premises [was made] available to [OKTUL] for use as its intended purpose." Dkt. 34-1 at 8, 14.[5] But there is no allegation that the property was ever made available to OKTUL for use. *See* Dkt. 3. OKTUL argues that, because the term of the lease agreement never commenced, the lease agreement was never in force and OKTUL never owed any obligations under it. Dkt. 34 at 6-7. MRTH has not responded to this argument, nor has it pointed to any contractual provisions negating OKTUL's contention. Dkt. 45 at 5-6. Because MRTH has not pointed to any well-pleaded factual allegations establishing that the agreement was enforceable and gave rise to duties prior to the initial term of that agreement, the breach-of-contract claim is dismissed.

Even if the Court were to assume that the lease agreement was in force, the complaint would still fail to state a claim because it does not establish that any duties were owed and breached by OKTUL. MRTH generally alleges that OKTUL made warranties in the lease agreement regarding its financial ability to operate a psychiatric hospital and further warranted that it would not take actions having a "Material Adverse Effect on the relationship of the parties." Dkt. 3 at ¶¶ 44, 45. But the Court has searched in vain for a contractual provision establishing either alleged obligation,[6] and MRTH has

---

[5] The Court can consider the agreement, which is attached to OKTUL's motion to dismiss and is not challenged on authenticity grounds, because it is central to and referenced in Plaintiffs' complaint. *White v. Lucero*, 135 F.4th 1213, 1219 (10th Cir. 2025).

[6] Section 6.07 of the lease agreement warrants that the financial information provided by OKTUL is complete, accurate, and up-to-date. Dkt. 43-2 at 17. The term "Material Adverse Effect," which is not as broad as MRTH claims, appears only in the context of Section 6.07 and Section 9.04(a). Section 9.04(a) places obligations on MRTH, not OKTUL. *See* Dkt. 43-2 at 9, 17, 25.

No. 23-cv-507

not pointed to the specific provisions that allegedly gave rise to a duty that
was breached by OKTUL. *See* Dkt. 45 at 4-5. The Court need not accept
MRTH's allegations regarding OKTUL's obligations under the lease agree-
ment when those allegations are not tied to or supported by the agreement
itself.[7] Because MRTH has failed to allege a contractual obligation that was
breached by OKTUL, dismissal of the breach-of-contract claim is proper. *Cf.
Willis v. Dep't Stores Nat. Bank*, 613 F. App'x 755, 757 (10th Cir. 2015) (affirm-
ing dismissal of breach-of-contract claim where the complaint "d[id] not
identify a contractual promise that was breached" and the plaintiff's claim
that a promise was made in a letter was "not a tenable reading" of that docu-
ment).

B

The Court next considers Plaintiffs' claims for fraud and fraudulent
inducement, both of which are subject to the heightened pleading require-
ments in Rule 9 of the Federal Rules of Civil Procedure. Under Rule 9, a party
alleging fraud must "state with particularity the circumstances constituting
fraud . . . ." Fed. R. Civ. P. 9(b). The Tenth Circuit has clarified the scope of
this rule, indicating that a complaint alleging fraud must "set forth the time,
place and contents of the false representation, the identity of the party making
the false statements and the consequences thereof." *Koch v. Koch Indus., Inc.*,
203 F.3d 1202, 1236 (10th Cir. 2000) (quoting *Lawrence Nat'l Bank v. Ed-
monds (In re Edmonds)*, 924 F.2d 176, 180 (10th Cir. 1991)).

Plaintiffs' claims fail this standard. The complaint alleges that Plain-
tiffs' relied on "representations made by Mr. Hicks and Ms. Reagle regarding
the Certificate of Need," but it does not identify the time, place, or contents

---

[7] *E.g., Prissert v. EMCORE Corp.*, 894 F. Supp. 2d 1361, 1368 (D.N.M. 2012) (rec-
ognizing that, if "documents central to a plaintiff's claim "contradict the allegations of the
amended complaint, the documents control and [the] Court need not accept as true the
allegations in the [ ] complaint" (quoting *Rapoport v. Asia Elec. Holding Co., Inc.*, 88 F. Supp.
2d 179, 184 (S.D.N.Y. 2000)) (alteration in original).

7

No. 23-cv-507

of the representations, nor does it specify which portions of the representations were false. Dkt. 3 at ¶¶ 25, 71. The complaint suggests Mr. Hicks made "verbal and personal guaranties regarding the lease and OKTUL's ability to perform," but that allegation, which is made "[u]pon information and belief," provides no information as to what was said, when it was said, where it was said, and why the statement was false. *Id.* at ¶ 26. Plaintiffs' vague allegations that other defendants (three of which are corporate entities) made false representations at some point during months-long intervals likewise fail to identify who made the false statements and when and where the false statements were made. *Id.* at ¶¶ 52, 55, 59-61, 69-71.

To the extent Plaintiffs rely on a theory of constructive fraud, their claim fares no better. To state a claim for constructive fraud, Plaintiffs must allege facts establishing that a Defendant had a duty to speak but failed to do so. *See Croslin v. Enerlex, Inc.*, 2013 OK 34, ¶ 12, 308 P.3d 1041, 1046. Plaintiffs have failed to allege with particularity the circumstances that would have obligated any party to speak. They have not identified which of the several Defendants are responsible for a false impression that required correction. *See Lillard v. Stockton*, 267 F. Supp. 2d 1081, 1113 (N.D. Okla. 2003) (dismissing constructive-fraud claim where the plaintiffs "fail[ed] to distinguish among the Defendants in assigning responsibility for the fraud"). They have not specified the date, place, or speakers who made incomplete statements or material omissions. *See id.* (recognizing that the plaintiffs failed to provide specifics regarding "the alleged misrepresentations and omissions on which they base their claims"). And they have not pointed to "any facts to establish that [any Defendant] had an affirmative duty" to provide additional, undisclosed information to Plaintiffs. *Payne Expl. Co. v. Trident Steel Corp.*, No. CIV-15-818-D, 2016 WL 1530006, at *5 (W.D. Okla. Apr. 14, 2016). Plaintiffs have not met the heightened pleading standard applicable to their constructive-fraud claim.

No. 23-cv-507

Plaintiffs' threadbare allegations are simply insufficient to satisfy Rule 9's requirements. *See Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 990 (10th Cir. 1992) (affirming dismissal of RICO mail-fraud claim where the plaintiffs could not "determine the exact dates" of the fraudulent mailings made over a period of years); *Swimwear Sol., Inc. v. Orlando Bathing Suit, LLC*, 309 F. Supp. 3d 1022, 1047 (D. Kan. 2018) (concluding that allegations regarding conduct that took place over a "relatively short, definite timeframe—in no case longer than one month—are sufficiently detailed" to satisfy Rule 9); *Arena v. Wal-Mart Stores, Inc.*, 221 F.R.D. 569, 572 (D. Kan. 2004) (holding that a general reference to a corporate entity is "insufficient to identify the speaker" for purposes of Rule 9). Accordingly, the Court grants Defendants' motions to dismiss Plaintiffs' claims for fraud and fraudulent inducement without prejudice. If Plaintiffs reassert these claims, they should specifically identify who made the allegedly false statements, provide more detail about what was said, and provide meaningful limitations about the date of the allegedly false statements.

## C

Plaintiffs' fraudulent-transfer claim also fails to pass muster. Under Oklahoma law, fraudulent transfers are transfers made or obligations incurred "by a debtor" if the transfer was made (1) "with actual intent to hinder, delay, or defraud any creditor of the debtor;" or (2) "without receiving a reasonably equivalent value" where certain other conditions regarding the debtor's ability to repay his obligations are satisfied. Okla. Stat. tit. 24, § 116.[8] There is no

---

[8] Defendants argue, and Plaintiffs do not dispute, that this claim is governed by Oklahoma law and, more specifically, the Oklahoma Uniform Fraudulent Transfer Act. *See* Dkt. 34 at 10 (alleging that the UFTA governs Plaintiffs' claims); Dkt. 41 at 14 (same); Dkt. 43 at 17-18 (same); *see also* Dkts. 45 at 8, 47 at 6-7, 50 at 8. Plaintiffs suggest that an alter-ego theory of liability might also apply in this case. *See* Dkt. 45 at 8 (citing *Stephens v. Mike's Transp., Inc.*, 2023 OK CIV APP 26, ¶ 1, 535 P.3d 772, 773). But alter-ego claims are post-judgment claims brought when a party who has an unrecoverable judgment against one entity is permitted, in fairness and equity, to recover against another entity that "in reality is the same entity with a different name." *Stephens*, 2023 OK CIV APP 26 at ¶ 24, 535 P.3d at

No. 23-cv-507

allegation that any Defendant owes a debt to any Plaintiff, and as a result, there is no legal basis for recovery under the Uniform Fraudulent Transfer Act. Plaintiffs' fraudulent-transfer claims are dismissed.

### D

Mr. Hicks, Ms. Reagle, Reagle Consulting, Mr. Thompson, Mingo 83, Thompson Construction, and Insight argue that they cannot be held liable on either of Plaintiffs' intentional interference claims because there is no allegation that any of those Defendants interfered with a business or contractual obligation owed to Plaintiffs. *See* Dkt. 34 at 12; Dkt. 41 at 16-18; Dkt. 43 at 19-21. In response, Plaintiffs argue that OKTUL owed obligations to MRTH, and that the other Defendants knew about those obligations when they created a new, competing company with OKTUL's principal. *E.g.,* Dkt. 47 at 8.

The Court agrees with Defendants. As discussed in Section III(A), *supra*, the complaint fails to identify a contractual duty owed by OKTUL to MRTH. And the complaint fails to set forth facts that would permit the Court to conclude that OKTUL owed any extracontractual obligations to MRTH or any other Plaintiff. *See* Dkt. 3 at ¶¶ 96-102 (alleging only that Plaintiffs "had a business relationship with OKTUL" and Defendants "interfered with [that] business relationship" by rendering unspecified "performance" impossible). Because the complaint does not set forth facts establishing the existence of a business or contractual right—an essential element of Plaintiffs' intentional interference claims—those claims must be dismissed. *Tuffy's, Inc. v. City of Oklahoma City*, 2009 OK 4, ¶ 14, 212 P.3d 1158, 1165 (recognizing that a plaintiff seeking to recover on an intentional-interference claim must establish, among other things, "interference with a business or contractual right").

---

778). The allegations of the complaint do not support a claim for relief under an alter-ego theory, particularly given the absence any judgment establishing that any Defendant owes a judgment to any Plaintiff.

No. 23-cv-507

E

Plaintiffs' final substantive claim, a civil-conspiracy claim, cannot move forward. A civil conspiracy takes place when "a combination of two or more persons" agree to "do an unlawful act, or . . . do a lawful act by unlawful means." *Brock v. Thompson*, 1997 OK 127, ¶ 39, 948 P.2d 279, 294 (footnotes omitted). A civil conspiracy claim, does not, by itself, create liability. *Id.* "To be liable the conspirators must pursue an independently unlawful purpose or use an independently unlawful means. There can be no civil conspiracy where the act complained of and the means employed are lawful." *Id.* (emphasis and footnotes omitted). Rather than establishing an independent basis for relief, "a civil conspiracy claim enlarges the pool of potential defendants from whom a plaintiff may recover for an underlying tort." *Id.* at 294, n.66.

In this case, the Court has already concluded that Plaintiffs have failed to allege facts that, if true, would establish the existence of an underlying tort or unlawful act. As a result, Plaintiffs cannot use a civil-conspiracy claim to expand the "pool" of defendants responsible for tortious conduct; there is no "pool" to enlarge. *See Shoemaker Corp. III, Inc. v. Garrett*, 704 F. Supp. 3d 1222, 1259 (N.D. Okla. 2023) (recognizing that the existence of "one or more unlawful, overt acts" is an essential element of a civil conspiracy claim). Defendants' motion to dismiss Plaintiffs' civil-conspiracy claim is granted.

F

Although Plaintiffs' request for injunctive relief is styled as a separate claim, it is derivative of Plaintiffs' other claims. *See CCPS Transp., LLC v. Sloan*, 611 F. App'x 931, 933 (10th Cir. 2015) (recognizing that, "however they are pleaded, different remedial requests do not make for different claims"). Because the Court has dismissed all of Plaintiffs' substantive claims, their claim for injunctive relief must be dismissed as well. *See Renfro v. City of Bartlesville*, No. 12-cv-208-GKF-PJC, 2012 WL 5996376, at *6 (N.D. Okla. Nov. 30, 2012) ("Thus, it is clear that regardless of whether plaintiffs seek injunctive or declaratory relief, to survive defendant's Rule 12(b)(6) motion,

No. 23-cv-507

their Amended Petition must allege a cognizable *substantive* claim or claims.").

IV

For the reasons set forth above, Plaintiffs' complaint fails to state a viable claim for relief with respect to any of the claims asserted against Defendants. Defendants' motions to dismiss [Dkts. 34, 41, 43] are granted, and Plaintiffs' complaint [Dkt. 3] is dismissed without prejudice. Plaintiffs' remaining motion [Dkt. 4] is denied as moot.

DATED this 29th day of September 2025.

JOHN D. RUSSELL
*United States District Judge*